# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Lydia Harris,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Death Row Records Inc, Marion Suge Knight, Calvin Cordozar Broadus Jr., Interscope Records Inc, Jimmy Iovine, Interscope Communications, Ted Field, Time Warner, David Cohen, Universal Music Group, Lucian Grainge, David Kenner, Mickey Shapiro, et al.** | § § § § § § § § § § | **Case No. 4:25-cv-01266** |
| | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS DEATH ROW RECORDS LLC AND CORDOZAR CALVIN BROADUS, JR.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) AND 12(b)(6)

## **TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ..........................................................1

II.   PERTINENT FACTUAL BACKGROUND ....................................3

    A.    Plaintiff Files for Bankruptcy.............................................3

    B.    The 2002 Los Angeles Superior Court Litigation and 2005
           Judgment ............................................................................4

    C.    Plaintiff Enters into Court-Approved Settlement Agreement
           with Knight and Death Row Relating to California Judgment
           and Waives and Releases All Future Claims ..........................5

    D.    Plaintiff Files Series Of Unsuccessful Motions in California to
           Set Aside California Judgment...............................................6

    E.    Broadus Purchases Death Row Assets ..................................8

    F.    The Current Texas Litigation ................................................8

III.  ARGUMENT...........................................................................10

    A.    The Case Should be Dismissed for Lack of Service of Process .........10

    B.    The Case Should be Dismissed with Prejudice Because All of
           Plaintiff's Claims are Barred by the Statute of Limitations ...............13

           i.    Plaintiff's Request for Relief from Judgment Under Rule
                    60(b) is Time-Barred...............................................14

           ii.   Plaintiff's Other Claims Are Similarly Time-Barred...............16

    C.    Plaintiff's Claims Are Also Barred by the Doctrine of Res
           Judicata ..............................................................................17

    D.    Plaintiff's Claims Are Not Pled with the Requisite Particularity
           and Should be Dismissed with Prejudice ...............................24

    E.    Request for Dismissal with Prejudice and Motion to Label
           Plaintiff as a Vexatious Litigant ..........................................26

      i.     Plaintiff's Complaint Should Be Denied with Prejudice ..........26

      ii.    Defendants' Request to Label Plaintiff as a Vexatious
           Litigant ......................................................................................27

IV.   CONCLUSION..............................................................................29

Defendants Death Row Records LLC (erroneously named as Death Row Records Inc.) ("DRR")[1] and Cordozar Calvin Broadus, Jr. (erroneously named as Calvin Cordozar Broadus Jr.) (p/k/a Snoop Dogg) ("Broadus") (together, "Defendants"), who are appearing for the sole and limited purpose of filing this motion, move to dismiss Plaintiff Lydia Harris's ("Plaintiff") Complaint[2] pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) (the "Motion").[3]

## I.    SUMMARY OF ARGUMENT

After filing a litany of claims in 2002 relating to her purported ownership interest in Death Row Records ("Death Row"), a California trial court entered a default judgment against Death Row (and another defendant) in March 2005. The trial court then awarded Plaintiff a $107 million judgment (the "California Judgment"). A bankruptcy court-approved settlement in 2008 ultimately

---

[1] As set forth in more detail below, Death Row Records LLC ("DRR") is the effective successor-in-interest to Death Row Records. Death Row Records *Inc.*, which Plaintiff named in her Complaint, is a nonexistent entity.

[2] While Plaintiff styled her initial filing as a "Motion to Set Aside Judgment" (*see* Dkt. 1), Defendants look past the label to its substance and treat Plaintiff's filing as the operative complaint or petition (the "Complaint") for purposes of this Motion. *See Bros, Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963) ("The relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.").

[3] By filing this Motion, Defendants do not consent to jurisdiction in this Court and do not waive service under the Federal Rules of Civil Procedure or Texas Rules of Civil Procedure. Defendants specifically reserve all rights to contest jurisdiction or any other deficiency in Plaintiff's Complaint.

1

extinguished and resolved the California Judgment.  Tellingly, Plaintiff omits the 2008 settlement in her Complaint.  Subsequent to the settlement, Plaintiff filed a series of unsuccessful motions in California attempting to set aside the California Judgment.  The latest rejection was affirmed by the California Court of Appeal in 2023.

Now, after her repeated failed attempts to set aside the judgment in California, Plaintiff is trying a new forum, Texas, for her frivolous attempt to relitigate claims she previously advanced in 2002 and to set aside the California Judgment.  Plaintiff's Complaint—consisting of 2.5-pages of repetitive, vague, and conclusory allegations—is just Plaintiff's latest groundless attempt to relitigate issues resolved decades ago.[4]

The Court should not entertain Plaintiff's latest bite at the apple for at least four reasons.  <u>First</u>, Plaintiff has failed to properly serve Defendants, warranting dismissal under Fed. R. Civ. P 12(b)(5).  Plaintiff's status as a *pro se* litigant does not immunize her from complying with the Federal Rules of Civil Procedure, Texas

---

[4] The California Court of Appeal described the twenty-three-year procedural history of Plaintiff's claims and efforts to set aside her judgment in an April 2023 unpublished opinion (*Harris v. Gilliam*, No. B320824, 2023 Cal. App. Unpub. LEXIS 2265, at *1-14), a copy of which is attached hereto as **Exhibit A** (exhibits are attached to the concurrently filed declaration of Max N. Wellman). While unpublished appellate opinions are typically unsuitable for citation, the California Rules of Court expressly allow for reliance on such opinions when "relevant under the doctrines of…res judicata, or collateral estoppel." Cal. R. Ct. 8.1115.

Rules of Civil Procedure, the Southern District of Texas's local rules, or this Court's rules.  <u>Second</u>, all of Plaintiff's claims are barred by the applicable statute of limitations.  In particular, Plaintiff's request to set aside her March 2005 California Judgment under Fed. R. Civ. P. 60(b) is **two decades** too late.  <u>Third</u>, Plaintiff's claims and attempt to set aside the California Judgment have been conclusively (and repeatedly) resolved by California courts, including the California Court of Appeal. As such, Plaintiff's claims are barred by the doctrine of res judicata.  <u>Fourth</u>, Plaintiff has failed to plead any of her claims with the required particularity, necessitating dismissal under Fed. R. Civ. P. 12(b)(6).  Any attempt to amend would be futile because Plaintiff's claims are time-barred and barred by the doctrine of res judicata.

Put simply, enough is enough.  Litigation must cease.  Plaintiff had her day in court (several *decades* in court, in fact), and her latest attempt to find refuge for her frivolous claims in Texas should be rejected.  Therefore, for all of the above and foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Additionally, Defendants request that this Court designate Plaintiff as a vexatious litigant and enjoin her from filing yet another suit against Defendants after this case is dismissed.

## II.  **PERTINENT FACTUAL BACKGROUND**

### A.  *Plaintiff Files for Bankruptcy*

In 1996, Plaintiff filed for Chapter 7 bankruptcy, but did not list as an asset

her claimed 50 percent ownership interest in Death Row. *See* Ex. A at p. 2. Plaintiff was denied a discharge in 1997 and the case was closed without administration of any assets in 1999. *Id.*

### B.    The 2002 Los Angeles Superior Court Litigation and 2005 Judgment

In 2002, Plaintiff filed a lawsuit in the Los Angeles Superior Court against multiple defendants, including Death Row and Marion H. Knight (p/k/a Suge Knight) ("Knight") in the action styled *Lydia Harris et al. v. Kevin Gilliam aka Battlecat et al.*, Case No. BC268857 (the "2002 Litigation"). A copy of the complaint filed in the 2002 Litigation is attached hereto as **Exhibit B**.[5] In the 2002 Litigation, Plaintiff asserted various claims relating to her purported 50 percent ownership interest in Death Row and alleged that defendants conspired to deprive her of that interest. *See generally,* Ex. A (asserting claims including intentional interference with contractual relations, fraud and conspiracy to defraud, defamation, intentional infliction of emotional distress, and violation of California's Business and Professions Code §17200, among others).

In March 2005, the trial court struck Death Row and Knight's answer, entered a default judgment against Knight and Death Row, and awarded Plaintiff a judgment

---

[5] Broadus was added to the 2002 Litigation as a doe defendant in or around August 5, 2002 (*see* **Exhibit C**) but was dismissed from the case "without prejudice" on August 25, 2004. *See* **Exhibit D** (copy of 2002 Litigation docket).

in the amount of $107 million.  *See* March 9, 2005 Judgment, *Lydia Harris et al. v. Kevin Gilliam aka Battlecat et al.*, Case No. BC268857, a copy of which is attached hereto as **Exhibit E**.

### C.    *Plaintiff Enters into Court-Approved Settlement Agreement with Knight and Death Row Relating to California Judgment and Waives and Releases All Future Claims*

In 2006, Death Row and Knight both filed for bankruptcy.  *See* Ex. A at p. 6. Plaintiff then filed proofs of claims in both bankruptcy proceedings based on the California Judgment.  *Id.*  Plaintiff's earlier bankruptcy case was also re-opened in August 2007 and the former trustee was reappointed after learning about the California Judgment.[6]  *Id.*

Proceedings in bankruptcy court were then initiated by Knight and Death Row against Plaintiff seeking to declare the California Judgment satisfied or disallowed under various theories; separately, Plaintiff sought to declare the California Judgment a nondischargeable debt (the "Bankruptcy Proceedings").  *Id.* at pp. 6-7. Following mediation, the parties settled the Bankruptcy Proceedings in 2008, and agreed on how Plaintiff's California Judgment would be distributed and paid out (the "2008 Settlement").  *Id.* at p. 7.  A copy of the settlement agreement and related bankruptcy records are attached hereto as **Exhibit F**.  In particular, a portion of Plaintiff's proof of claim in the bankruptcy proceeds was allowed, in part as an

---

[6] Plaintiff's reopened bankruptcy proceeding closed in Dec. 2015.  Ex. A at p. 8.

unsecured claim and in part as a subordinated claim.  Ex. A at p. 7; Ex. F § 3.

Notably, as part of the 2008 Settlement, Plaintiff personally agreed to a general release of all claims "pertaining to the matters released in th[e] agreement", including all *future* claims.  *See* Ex. F § 9(f) ("intention of each [party]…[to] fully, finally, and forever [] settle and release all such matters and all such claims relative to these matters which do now exist, may exist, or previously have existed between the [parties]"); *see also* Ex. A at p. 7.  The agreement also expressly states that it "shall bind and shall inure to the benefit of successors and assigns of [Death Row]," including any "parent, affiliate, predecessor-in-interest, successor-in-interest, or assign."  Ex. F § 17.  The settlement agreement was approved by the bankruptcy court on June 9, 2008.  Ex. F; Ex. A at p. 7.

### D.    *Plaintiff Files Series Of Unsuccessful Motions in California to Set Aside California Judgment*

After the 2008 Settlement and in the intervening years leading up to the instant action, Plaintiff or Plaintiff's attorneys filed a series of unsuccessful motions to set aside or void the California Judgment, namely on jurisdictional grounds.  *See* Ex. A (*Harris*, No. B320824, 2023 Cal. App. Unpub. LEXIS 2265, at *1-14 (describing the twenty-three-year procedural history of Plaintiff's efforts to void or set aside the California Judgment)).  In particular, Plaintiff contended the superior court lacked jurisdiction to entertain the 2002 Litigation because the subject matter of the action—damages arising from Plaintiff's alleged ownership interest in Death Row—

6

was property that belonged to her bankruptcy estate and the claims could only be asserted by the bankruptcy trustee. *Id.*

Below is a chronology of Plaintiff's most recent attempts (and failures) to set aside the California Judgment:

- <u>2019</u>: Harris moved to set aside the California Judgment. After initially granting the motion, the court later vacated its ruling after it was "provided information not disclosed by Harris or [her attorney]", including the fact that Harris's judgment was "ratified...through settlements in [] bankruptcy cases involving the various parties, including Harris and Knight." The court denied Harris's motion for reconsideration of the order vacating its prior ruling (*see* **Exhibit G**);

- <u>September 2020</u>: Court denied a second motion by Harris to set aside the California Judgment and issued sanctions (*see* **Exhibit H**);

- <u>October 2020</u>: Two weeks after sanctions issued, Harris filed yet another, new motion to set aside the California Judgment. The court again denied the motion (*see* **Exhibit I**); and

- <u>March 2022</u>: Harris filed a motion to set aside the California Judgment again. As in previous motions, Harris made jurisdictional arguments. The motion was denied (*see* **Exhibit J**), and Harris appealed. The Court of Appeal affirmed the denial on April 20, 2023. *See* Ex. A (Court of Appeal opinion).

*See* Ex. A at pp. 1-14.[7]

To summarize, in repeatedly rejecting Plaintiff's various motions, California courts reasoned that the 2008 Settlement fully resolved any possible jurisdiction issues and that all of Plaintiff's claims had been resolved by the 2008 Settlement or

---

[7] Plaintiff's successive motions to set aside the California Judgment were all filed on the docket in the 2002 Litigation (Case No. BC268857). *See generally* Ex. D.

2002 Litigation.  *See* Ex. A at pp. 8-19; *see generally* Exs. G-J.

### E.    *Broadus Purchases Death Row Assets*

In 2022, Broadus purchased certain assets including the Death Row trademarks and music publishing catalog.  Declaration of Paul Bernstein, ¶¶ 4-6 ("Bernstein Decl."), attached hereto as **Exhibit K**; *see also e.g.,* **Exhibit L** (copies of trademark assignment agreement and related documents, publicly filed with the United States Patent and Trademark Office ("USPTO"), assigning the Death Row trademarks to Death Row Records LLC ("DRR")).

Broadus is the sole managing member of DRR, which was formed under the laws of Delaware.  Bernstein Decl., ¶ 3; *see* **Exhibit N**.[8]  Since the acquisition, Broadus has signed new artists and revitalized the "Death Row" brand and roster.  Bernstein Decl., ¶ 7.  In other words, DRR falls squarely within the language of the release provision of the 2008 Settlement.  *See* Ex. F § 17.

### F.    *The Current Texas Litigation*

On March 18, 2025, Plaintiff filed her Complaint in this litigation, alleging claims relating to the 2002 Litigation, the California Judgment, and the 2008

---

[8] Death Row was originally formed under the laws of California in 1992.  *See* **Exhibit O**.  Through a series of transactions over many years, the assets of Death Row were cleansed in bankruptcy and/or assigned to bona fide buyers (Bernstein Decl., ¶ 5), creating the requisite privity with the original entity.  In her Complaint, Plaintiff erroneously named DRR as Death Row Records *Inc*.

Settlement. *See generally* Dkt. 1 ("Compl."); Ex. A at pp. 8-14; Ex. F. The Complaint names numerous defendants, including DRR (erroneously named as Death Row Records Inc.) and Broadus. Compl. at 1. Plaintiff's 2.5-page Complaint alleges that she was awarded the California Judgment, but "[r]ather than complying with the court's ruling, Defendants engaged in a deliberate and coordinated scheme to obstruct justice, conceal assets, and evade liability, including:"

    a. **Willful discovery abuse** by refusing to produce financial records and other key evidence.

    b. **Fraudulent legal filings**, including a misleading Motion for Summary Judgment, to improperly remove key corporate insiders from liability.

    c. **Strategic bankruptcy filings (Chapter 11 and later Chapter 7)** to prevent enforcement of the judgment and shield assets from collection.

    d. **Systematic misrepresentation and fraudulent telecommunications** directed at the Plaintiff in Texas to further obstruct her ability to collect the judgment.

Compl. at 3 (emphasis in original). Plaintiff claims she has been "deprived of the $107 million court-ordered judgment and has suffered significant financial and reputational harm." *Id.* Plaintiff further alleges that "[t]hese actions constitute fraud on the court, civil conspiracy, obstruction of justice, and abuse of legal process, warranting federal intervention under Rule 60[b] of the Federal Rules of Civil Procedure." *Id.* Plaintiff's Complaint makes no mention of the 2008 Settlement.

### III.   **ARGUMENT**[9]

#### *A.   The Case Should be Dismissed for Lack of Service of Process*

The Federal Rules of Civil Procedure provides that "[a] summons must be served with a copy of the complaint" and that "[t]he plaintiff is responsible for having the summons and complaint served [on defendants]." Fed. R. Civ. P. 4(c)(1); *see also* Tex. R. Civ. P. 99(a) ("Upon the filing of the petition, the clerk, when requested, shall forthwith issue a citation and deliver the citation as directed by the requesting party. The party requesting citation shall be responsible for obtaining service of the citation and a copy of the petition.").[10]  Failure to include the summons along with the complaint is fatal to establishing personal jurisdiction.  *See Murphy Bros. v. Michetti Pipe Stringing,* 526 U.S. 344, 350-51 (1999) (court may only exercise personal jurisdiction over defendant if procedural requirement of service of summons is satisfied); *Pickett v. City of Houston*, 2009 U.S. Dist. LEXIS 36125, at *5-6 (S.D. Tex. Apr. 29, 2009) (finding insufficient process where "[c]ourt's

---

[9] On a motion to dismiss, the court can review "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The court may also refer to matters of public record in considering a motion to dismiss. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

[10] *See also* Judge Hittner Court Rules at p. 1 ("Plaintiffs must serve copies of the orders on Defendants with the summons and complaint."); S.D. Tex. L. R. 4 ("Parties other than prisoners must provide completed summons forms for issuance by the clerk.").

electronic filing system confirms that no summons was issued by the Clerk of Court in th[e] case"); *Chapman v. Trans Union LLC*, 2011 U.S. Dist. LEXIS 56370, at *2-3 (S.D. Tex. May 26, 2011) (finding insufficient service in case where "[p]laintiff caused no summons to issue").

Here, as the docket shows, no summons has issued for ***any*** defendant in this case. *See generally* Dkt. Plaintiff has also adduced no evidence that DRR or Broadus were served with the Complaint *and* the requisite summons. *See Aetna Bus. Credit, Inc. v. Univ'l Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981) ("When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity."). This ground alone warrants dismissal pursuant to Rule 12(b)(5).

Separately, the Federal Rules of Civil Procedure prohibit *a party* from serving the summons or complaint. *See* Fed R. Civ. P. 4(c)(2) ("[a]ny person who is at least 18 years old and *not a party* may serve a summons and complaint") (emphasis added); *see also* Tex. R. Civ. P. 103 ("no person who is a party to…a suit may serve any process in that suit"). Here, the proof of service filed by Plaintiff clearly shows that Plaintiff herself served the Complaint via certified mail. *See* Dkt. 4 (showing Lydia Harris signature on the line above "name of person serving papers"). This is clearly improper and constitutes an independent ground for insufficient service.

But even if someone other than Plaintiff had served the Complaint, service

would still be improper because Plaintiff served DRR and Broadus via certified mail. *See* Dkt. 4 (Plaintiff attaching certified mail receipts as "proof of service"). Under the Federal Rules, certified mail is not a proper form of service. *See* Fed. R. Civ. P. 4(e) (certified mail not listed as authorized method of service), 4(h)(same); *see also Rojas v. Carrington Mortg. Servs., LLC*, 2021 U.S. Dist. LEXIS 52943, at *5 (S.D. Tex. Mar. 22, 2021) (use of certified mail is "not sufficient to constitute delivering" as required by Fed. R. Civ. P.).

Although service may be alternatively effectuated under Texas state law (*see* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A)), Texas Rules of Civil Procedure require that for service made by certified mail, it must be directed to a corporation's authorized agent and the addressee's signature must appear on the return receipt. *See* Tex. R. Civ. P. 106, 107 ("return…must contain the return receipt with the addressee's signature"); *Rojas*, U.S. Dist. LEXIS 52943, at *6 (insufficient service where no return receipt filed); *Yaya v. Driscoll Child.'s Hosp.*, 2025 U.S. Dist. LEXIS 21608, at *7-8 (S.D. Tex. Jan. 8, 2025) (holding service improper where summons merely addressed to hospital and mail return receipt indicated it was not delivered to authorized agent). Moreover, "service to an address's mailbox or front desk does not constitute service on the proper party or agent." *Yaya*, U.S. Dist. LEXIS 52943, at *7.

Here, as in *Rojas*, no return receipt has even been filed for DRR or Broadus. *See generally* Dkt. And, as in *Yaya*, there is no evidence Plaintiff directed service to

DRR's authorized agent.  Instead, the certified mail receipt shows it was merely addressed to "Death Row Records" generally.  *See* Dkt. 4.  In fact, the evidence suggests Plaintiff improperly served both DRR and Broadus via a "mailbox or front desk" (*i.e.*, the same 1424 Second Street, 3rd Floor address in Santa Monica, California was used as the service address for both DRR and Broadus alike).  Thus, Plaintiff has also failed to comply with Texas state law for service of process.

Finally, Plaintiff's *pro se* status does not exempt her from complying with procedural rules.  *See Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013) ("A litigant's pro se status neither excuses his failure to effect service nor excuses him for lack of knowledge of the Rules of Civil Procedure");  *Rojas*, 2021 U.S. Dist. LEXIS 52943, at *6-7 (pro se plaintiffs are "expected to follow all Federal Rules of Civil Procedure" and warning that case will be dismissed if defendants not "properly serve[d]").  "Actual notice is [also] not sufficient to show proper service." *Yaya*, 2025 U.S. Dist. LEXIS 21608, at *8 (pro se status, actual notice, and "good faith efforts" does not "supplant" plaintiffs need to "properly serve" defendants).

Accordingly, this case should be dismissed pursuant to Rule 12(b)(5).

## B.   *The Case Should be Dismissed with Prejudice Because All of Plaintiff's Claims are Barred by the Statute of Limitations*

Putting aside that Plaintiff's claims and requests for relief are substantively frivolous, her request is also undeniably time-barred by the relevant statute of limitations.  "A statute of limitations may support dismissal under Rule 12(b)(6)

where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Salas v. City of Galena Park*, 2024 U.S. App. LEXIS 28520, at *5 (5th Cir. Nov. 8, 2024).

  i. *Plaintiff's Request for Relief from Judgment Under Rule 60(b) is Time-Barred*

In March 2005, Plaintiff was awarded a $107 million judgment. *See* Compl. at 3; Ex. E. Pursuant to Rule 60(b) of the Federal Rules, Plaintiff now seeks to set the California Judgment aside, seemingly on the basis of alleged "fraud on the court, civil conspiracy, obstruction of justice, and abuse of legal process." Compl. at 3. But Plaintiff's request for relief based on events from 2005 are time-barred.

Rule 60(b)(3) of the Federal Rules allows relief from final judgments due to "fraud [], misrepresentation, or misconduct by an opposing party." However, Fed. R. Civ. P. 60(c)(1) clearly states "a motion under 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) **no more than one year** after the entry of the judgment or order or the date of the proceeding." (emphasis added). Here, the judgment Plaintiff seeks to set aside was entered on March 9, 2005. Ex. E. Thus, **<u>over 20 years have elapsed</u>** between the March 9, 2005 entry of judgment and the March 18, 2025 filing of Plaintiff's Complaint, a time period which is considerably outside the one-year statute of limitations. *See Hamner v. Moreno*, 2022 U.S. Dist. LEXIS 86387, at *2, 4-5 (S.D. Tex. Apr. 21, 2022) (granting motion to dismiss and finding action barred by statute of limitations because plaintiff filed

motion under 60(b)(3) for fraud decade too late).[11]

To the extent Plaintiff claims she is seeking relief "for any other reason that justifies relief" under Rule 60(b)(6), her claim would be similarly time-barred. Rule 60(b)(6) is reserved for "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 525 (2005). While Rule 60(b)(6) is not subject to the one-year statute of limitations, Rule 60(c) specifically limits the time of filing to a "reasonable time" after the judgment. More than 20 years is not within a "reasonable time" by any standard. *See e.g., First RepublicBank Fort Worth v. Norglass, Inc.,* 958 F.2d 117, 121 (5th Cir. 1992) (a two-year delay is "beyond the bounds of reasonableness," when movant gave no valid justification for the delay). Plaintiff's Complaint fails to provide any explanation as to why she waited *decades* to attempt to set aside the California Judgment on the basis of fraud, let alone plead "extraordinary circumstances."

Relatedly, in order to obtain relief under 60(b)(6), Plaintiff's reason must not be "premised on one of the grounds of relief enumerated in clauses 60(b)(1) through (b)(5*)."  Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Plaintiff's allegations of fraud fall squarely within the reasons for relief allowed

---

[11] To the extent Plaintiff is attempting to set aside the 2008 Settlement, it would similarly be barred by the statute of limitations by more than 15 years. *See* Ex. F (court order approving settlement entered on June 9, 2008).

under 60(b)(3).  Accordingly, Plaintiff cannot use 60(b)(6) to simply extend the one-year statute of limitations imposed by 60(b)(3).

### ii. *Plaintiff's Other Claims Are Similarly Time-Barred*

To the extent Plaintiff has pled other claims in her Complaint—*e.g.*, fraud, civil conspiracy, and abuse of process—any factual allegations relating thereto necessarily arise out of the same ownership interest dispute in Death Row that was resolved by the 2002 Litigation and 2005 California Judgment.  Therefore, such claims are similarly barred by the applicable statute of limitations. *See Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008) (four-year statute of limitations for fraud claims in Texas); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (limitations for civil conspiracy tied to the underlying tort); *Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. CIV. A. H-04-2322, 2004 WL 3331843, at *10 (S.D. Tex. Nov. 15, 2004) ("Texas law supplies a two-year statute of limitation to abuse of process claims.") (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003); 18 U.S.C. § 3282 (general five-year statute of limitations for federal offenses); Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (four-year statute of limitations for any claim not expressly identified by Texas Legislature).[12]  In sum,

---

[12] Plaintiff's claims would also be barred under California law.  *See* Cal. Civ. Proc. Code Ann. § 338(d) (three-year statute of limitations for fraud claims); *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 674 (Cal. Ct. App. 1988) (limitations for civil conspiracy tied to the underlying tort); *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 886-87 (Cal. Ct. App. 1992) (statute of limitations for abuse of

all possible claims pled by Plaintiff accrued decades ago and are time-barred, and Plaintiff's Complaint should be dismissed with prejudice.

### C.    Plaintiff's Claims Are Also Barred by the Doctrine of Res Judicata

The doctrine of res judicata precludes the re-litigation of claims that have been finally adjudicated. *Bullard v. Webster*, 679 F.2d 92, 93 (5th Cir. 1982). To the extent any of the claims in Plaintiff's Complaint arise from her alleged ownership interest in Death Row, those claims were resolved by the California Judgment and 2008 Settlement and are barred by the doctrine of res judicata. Separately, any attempt by Plaintiff to relitigate her unsuccessful motions to set aside the California Judgment is similarly barred by res judicata.

When determining the effect of a state judgment, "federal courts apply the res judicata law of that state." *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). Since the California Judgment was entered by a California state court, the 2008 Settlement was approved by a California bankruptcy court, and California state courts repeatedly issued orders rejecting Plaintiff's various motions to set aside the California Judgment, California state law applies here.

Res judicata arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits. *DKN Holdings*

_____

process one year in California); *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) (California general, residual statute of limitations is one year).

*LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015). "California law approaches the issue by focusing on the 'primary right' at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Cal Sierra Development, Inc. v. George Reed*, Inc., 14 Cal. App. 5th 663, 675 (2017). In other words, "[r]es judicata bars not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit." *Colebrook v. CIT Bank, N.A.*, 64 Cal. App. 5th 259, 264 (2021). "The rule of res judicata is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy." *Id*. at 261. Here, the res judicata elements have undeniably been met.

First, Plaintiff raises the same claims now as she did in the prior 2002 Litigation. In the 2002 Litigation, Plaintiff brought various claims against defendants for conspiring to deprive her of her alleged ownership interest in Death Row. *See* Ex. B. In this action, Plaintiff's Complaint seeks to vindicate the same primary right and obtain redress for the same injury asserted in the 2002 Litigation: Plaintiff's ownership interest in Death Row and Defendants' allegedly wrongful deprivation of that right. Because both the 2002 Litigation and present action seek redress of the same alleged injury and rights, the claims are identical. *See Boeken v.*

18

*Philip Morris USA, Inc.*, 48 Cal. 4th 788, 798 (2010) (dismissing complaint where both actions sought to vindicate same primary right of not being "wrongfully deprived" of particular right); *See v. Joughin*, 18 Cal. 2d 603, 607 (1941) (dismissing complaint where "[fraud] claims where substantially the same in both instances" and barred by res judicata); *Freitas v. Bank of Am.*, 2018 Cal. Super. LEXIS 33541, at *4 (May 24, 2018) (dismissing complaint where plaintiff "simply recast the previous fraud claim").

Further, to the extent Plaintiff claims she has alleged new theories of recovery, claims, or facts, *Cal Sierra* and *Colebrook* make clear this is not enough to overcome a res judicata finding.  *See Cal Sierra*, 14 Cal. App. 5th at 675 (res judicata still appropriate "even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery"); *Colebrook*, 64 Cal. App. 5th at 264 (res judicata bars "all issues which were or could have been raised in the original suit").

Additionally, as in the prior 2002 Litigation, Plaintiff is once again seeking to set aside the California Judgment.  *Compare* Exs. A, G-J (filing successive motions to set aside the California Judgment) *with* Compl. at 3 (requesting "[r]elief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure).  In sum, Plaintiff is seeking to relitigate the same claims from prior proceedings.

Second, the parties in this matter are identical to or in privity with the parties in the 2002 Litigation, 2005 California Judgment, and 2008 Settlement. "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Cal Sierra*, 14 Cal. App. 5th at 672; *see also* 7 Witkin, Cal. Proc. 6th Judgm. § 497 (2025) ("The most common form of privity is succession in interest. One who succeeds to the interests of a party in the property or other subject of the action, after its commencement, is bound by the judgment with respect to those interests in the same manner as if he or she were a party."). "[P]rivity requires the sharing of 'an identity or community of interest[.]'" *Cal Sierra*, 14 Cal. App. 5th at 672.

Here, Plaintiff is the plaintiff in both the 2002 Litigation and this action. Death Row was a defendant in the 2002 Litigation. DRR is a defendant in this proceeding and either a successor-in-interest or in privity with Death Row through proper assignment of all (or relatively all) of the Death Row assets. California law is well-settled that DRR is in privity with Death Row. *See Sawyer Nurseries v. Galardi*, 181 Cal. App. 3d 663, 672 (1986) (privity includes assignor and assignee relationship); *Lee v. POW Ent., Inc.*, 2021 U.S. App. LEXIS 35881, at *2-3 (Dec. 6, 2021) (res judicata barring claims as successor-in-interest under assignment agreement); *Yunus v. Crown Valley Imaging, Llc*, 2018 Cal. Super. LEXIS 26337, at

*2-3 (Sept. 28, 2018) (claim barred by res judicata and finding privity by assignment agreement); *McKinley Bros. v. McCauley,* 9 P.2d 298, 301 (Cal. 1932) (holding that judgment in favor of predecessor in interest barred subsequent claims against successor); *SLPR, L.L.C. v. San Diego Unified Port Dist.*, 49 Cal. App. 5th 284, 298 (2020) (successor-in-interest status sufficient to find privity); *Freitas*, 2018 Cal. Super. LEXIS 33541, at *4 (res judicata bars later claim made by plaintiff against defendant who is successor-in-interest of defendant in prior proceeding); *Posada v. Quest Equity Fund, LLC*, 2018 Cal. Super. LEXIS 3102, at *11 (Feb. 15, 2018) ("privity covers a successive relationship").

Further, Broadus's purchase of Death Row assets and his role as the managing member of DRR confers privity status between Broadus and DRR. *See Cal Sierra*, 14 Cal. App. 5th at 672 (privity by "inheritance, succession, or purchase"); *JPV I L.P v. Koetting*, 88 Cal. App. 5th 172, 193 (2023) (managing members were in privity with their limited liability companies); *Tuitama v. Nationstar Mortg. LLC*, 2015 U.S. Dist. LEXIS 49165, at *26-27 (C.D. Cal. Apr. 13, 2015) ("Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly…*unincorporated associations and their members*.") (emphasis added).  In short, there is a clear "share[d] identity" and "community of interest" between DRR and Broadus on the one hand, and Death Row on the other.

Moreover, as part of the court-approved 2008 Settlement between Plaintiff and Death Row, Plaintiff explicitly: (i) agreed to "forever [] settle and release all such matters and all such claims" that "now exist, may exist, or previously have existed" relating to the matters addressed in the settlement agreement (Ex. F § 9(f)), and (ii) agreed that the settlement would be binding on Death Row's "successors and assigns" and "inure to the[ir] benefit" (*id.* § 17). Thus, Plaintiff effectively covenanted that she would not file future claims relating to the California Judgment against any successors to Death Row or its assigns. Plaintiff cannot circumvent that unambiguous language now. *See Fox v. Fox*, 2023 Cal. Super. LEXIS 32522, at *11-13 (May 15, 2023) (finding court-approved bankruptcy settlement agreement had "preclusive effect as to the signatories of the agreement and those in privity with the signatories" where settlement language explicitly waived future claims and non-party to agreement had "community of interest" with party to settlement). Any finding that DRR and Broadus are not in privity with Death Row would wholly contradict and frustrate the terms of the 2008 Settlement.

Third, the prior proceeding concluded in a final judgment on the merits. As to the fraud, conspiracy, intentional inference and other similar claims, the trial court entered a default judgment against Death Row. Under California law, a default judgment is treated as a judgment on the merits. *See Martin v. General Finance Co.*, 239 Cal. App. 2d 438, 443 (1966) ("a judgment by default is as conclusive as to the

issues tendered by the complaint as if it had been rendered after answer filed and trial had…[s]uch a judgment is res judicata"); *Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860, 871 (2010) ("a judgment of default in a civil proceeding is res judicata as to all issues aptly pleaded in the complaint"); *Mendez v. Drumm*, 2024 Cal. Super. LEXIS 28277, at *8 (July 9, 2024) ("A default judgment is treated as a judgment on the merits and res judicata as to the claim involved").

The 2008 Settlement is also considered a final judgment on the merits. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000) (applying California law and finding that "[a] judicially approved settlement agreement is considered a final judgment on the merits."); *See Fox*, 2023 Cal. Super. LEXIS 32522, at *11 (finding that court-approved bankruptcy settlement "constitutes a final judgment for the purposes of res judicata").

The prior action also concluded in a final judgment on the merits as to Plaintiff's attempt to set aside the California Judgment: the California trial court repeatedly rejected Plaintiff's various motions to set aside, and in Plaintiff's most recent attempt, the Court of Appeal affirmed. *See Hong Du v. Wei*, 2022 Cal. Super. LEXIS 48557, at *6-7 (Aug. 29, 2022) (dismissal of motion to set aside default judgment in prior action considered final judgment on merits); *Jacobs v. Cal. Pub. Emple. Ret. Sys. Bd. of Admin.*, 2021 U.S. Dist. LEXIS 249765, at *7 (N.D. Cal. Dec. 30, 2021) (applying California law and holding that court's denial of plaintiff's

motion to set aside was "final judgment on the merits" and barred subsequent suit).

In sum, the doctrine of res judicata operates to bar Plaintiff from bringing any claims against Defendants relating to her interest in Death Row, as well as any attempt to relitigate her unsuccessful motions to set aside the California Judgment.

### D.    Plaintiff's Claims Are Not Pled with the Requisite Particularity and Should be Dismissed with Prejudice

To survive a Rule 12(b)(6) motion, Plaintiff's factual allegations must be sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere legal conclusions or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and to give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest.  *Id*.

While complaints drafted by *pro se* plaintiffs may be held to less strict standards in certain circumstances, *Haines v. Kerner*, 404 U.S. 519, 596 (1972), this liberal standard of review is not warranted where, as here, the plaintiff has filed numerous unsuccessful motions and lawsuits raising the same issues, which have repeatedly failed on the merits.  *See, e.g.*, *Lyons v. Sheetz*, 864 F.2d 493, 494-95 (5th Cir. 1987) (affirming summary dismissal of *pro se* plaintiffs' complaint, which had had "filed essentially the same suit three times"). Further, dismissal of a *pro se*

litigant's complaint for failing to make out a proper claim is appropriate where "it appears 'beyond doubt that the plaintiff can prove no set of facts in support [her] claims which would entitled [her] to relief.'" *Haines*, 404 U.S. at 596 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)); *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

Here, Plaintiff has failed to adequately plead any cognizable legal claim against Defendants (or *any* of the defendants named in her Complaint). Instead, Plaintiff's Complaint is replete with vague and conclusory allegations, and fails to assert any **facts** that could lead to a reasonable inference that Defendants are liable to her under any legal theory. Indeed, Plaintiff does not even attempt to allege facts particular to certain defendants, instead lumping all defendants together and asserting that they are all engaged in various abuses (*e.g.*, "[w]illful discovery abuse," "[f]raudulent legal filings," "[s]trategic bankruptcy filings," and "[s]ystematic misrepresentation and fraudulent telecommunications").

Further, Plaintiff has certainly not met the heightened pleading standard for fraud claims. *See* Fed. R. Civ. P 9(b)); *Webb v. Everhome Mortgage*, 704 Fed. Appx. 327, 329-30 (5th Cir. 2017) ("to survive a motion to dismiss, a party alleging fraud must, at minimum, plead the 'who, what, when, where, and how' of the alleged fraud."). Nor has Plaintiff sufficiently alleged the necessary elements needed for a

civil conspiracy claim. *See Unified Buddhist Church of Vietnam v. Unified Buddhist Church of Vietnam - Giao Hoi Phat Giao Viet Nam Thong Nhat*, 2019 U.S. Dist. LEXIS 248097, at \*5-6 (S.D. Tex. Jan. 17, 2019) ("A civil conspiracy claim consists of five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."). A review of the Complaint makes clear that Plaintiff has not pled *any* facts relating to a "meeting of the minds" or "unlawful, overt acts." Likewise, the same factual pleading deficiencies exist to the extent Plaintiff's Complaint includes independent claims for obstruction of justice and abuse of process.

While Plaintiff's factual allegations are taken as true at the motion to dismiss stage, courts are not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. In short, besides conclusory statements, Plaintiff provides no facts—*i.e.*, who, what, when, where—that provides any basis for relief. *Id.* Accordingly, Plaintiff's Complaint does not rise "above the speculative level" and must be dismissed.

### E. Request for Dismissal with Prejudice and Motion to Label Plaintiff as a Vexatious Litigant

#### i. Plaintiff's Complaint Should Be Denied with Prejudice

Defendants respectfully ask the Court to dismiss Plaintiff's Complaint with prejudice. While *pro se* complaints are usually dismissed without prejudice, this

rule does not apply to bad faith litigators.  *Lyons*, 834 F.2d at 495.  Plaintiff is unquestionably a bad faith litigant.  Over the last two decades, Plaintiff has repeatedly sought to set aside the California Judgment without any success.  *See generally* Exs. G-J (2022 trial court ruling noting that Plaintiff's motion was just "the latest groundless attempt by [Plaintiff]…to essentially void [the California Judgment]").  Indeed, the most recent rejection was affirmed by the California Court of Appeal.  *See* Ex. A at p. 16 (explaining that basis of court's rejections are "all points ignored (repeatedly) by Harris").  To be clear, Plaintiff continued a pattern of harassment in California for years and has now shifted her harassment to a new forum in Texas.  There is also no indication that allowing Plaintiff to amend will cure the defects in her Complaint, given that Plaintiff cannot pursue her claims against the Defendants because they are barred by the statute of limitations and res judicata.  Dismissal with prejudice is particularly appropriate when, as here, res judicata bars Plaintiff's claims.  *See James v. Allstate Vehicle and Property Ins. Co.*, No. 4:24-CV-636, 2025 WL 847884, at *2 (S.D. Tex. Mar. 18, 2025) (mem. op.).  To prevent Plaintiff's continued harassment, dismissal with prejudice is warranted.

## ii.   *Defendants' Request to Label Plaintiff as a Vexatious Litigant*

Lastly, Defendants respectfully request that the Court label Plaintiff as a vexatious litigant and enjoin her from filing additional lawsuits against DRR and Broadus without leave of Court.  Federal courts have the authority to enjoin

vexatious litigants from filing future state or federal actions under the All Writs Act.

*Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).  Federal district courts

also have the inherent authority to impose a pre-filing injunction to deter vexatious,

abusive, and harassing litigation.  *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181,

187 (5th Cir. 2008).  A court may impose a pre-filing sanction on a vexatious litigant

on review of the following factors:

> (1) the party's history of litigation, in particular whether he has filed
> vexatious, harassing, or duplicative lawsuits; (2) whether the party had
> a good faith basis for pursuing the litigation, or simply intended to
> harass; (3) the extent of the burden on the courts and other parties
> resulting from the party's filings; and (4) the adequacy of alternative
> sanctions.

*Id.* at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir.

2004)).  These factors weigh heavily towards an injunction preventing Plaintiff from

filing continued suits against Defendants.  As noted above, Plaintiff has a long

history of filing the same baseless motions seeking to set aside the California

Judgment.  *See* Ex. A at pp 8-14.  Nonetheless, Plaintiff continues to file successive

motions and initiate new proceedings.  After facing repeated rejections, Plaintiff had

no good faith basis to bring the instant action.  Instead of accepting the California

Judgment and acknowledging that the 2008 Settlement resolved her claims arising

out of her alleged ownership interest in Death Row, Plaintiff improperly seeks a do-

over.  Compl. at 3.  It is unclear if, without intervention of this Court, whether

Plaintiff will ever stop bringing frivolous claims related to Death Row and continue

to impose litigation costs on Defendants.[13]  To protect the efficiency of the courts and to protect the Defendants from continued harassment, the Defendants request that the court label Plaintiff as a vexatious litigant and enter an injunction blocking her from filing suits against DRR or Broadus without leave of Court.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that this Court: (1) dismiss Plaintiff's Complaint against Defendants Death Row Records LLC (erroneously named Death Row Records Inc.) and Cordozar Calvin Broadus, Jr. (erroneously named as Calvin Cordozar Broadus Jr.) with prejudice, and (2) label Plaintiff as a vexatious litigant and enter an injunction blocking her from filing further suits against Defendants without leave of Court. Defendants respectfully request any other relief to which they may be justly entitled.

/ / /
/ / /
/ / /
/ / /

---

[13] Plaintiff has been clear that she does not intend to stop her continued harassment of Defendants, recently telling a reporter, "I'm going to keep fighting until I get what's mine."  John Lomax V, *Houston woman files lawsuit against Death Row Records, Suge Knight and Snoop Dogg*, Houston Chronicle (Mar. 18, 2025), https://www.houstonchronicle.com/news/houston-texas/trending/article/death-row-records-lawsuit-houston-20228487.php).  Plaintiff also admitted in a recent podcast that the "ultimate goal" of this action is to obtain a settlement from the defendants.  bomb1st, *Lydia Harris On Suge Knight Giving her $1,000,000. Why She's Entitled To Money From New Lawsuit*, YouTube (Mar. 23, 2025), https://www.youtube.com/watch?v=yvwTOtbmvZw.

Respectfully submitted,

_____

Max N. Wellman (admitted *pro hac vice*)
CA State Bar No. 291814
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900 (phone)
(310) 229-9901 (fax)
***Attorney-in-Charge for Defendants Death Row Records LLC and Calvin Broadus, Jr.***

OF COUNSEL**:**
**VENABLE LLP**
Alicia M. Sharon *(admitted pro hac vice)*
California State Bar No. 323069
ASharon@venable.com
2049 Century Park East Ste 2300
Los Angeles, CA 90067
T: (310) 229-9900
F: (310) 229-9901

**DANIELS & TREDENNICK PLLC**
Douglas A. Daniels
Texas State Bar No. 00793579
S.D. Texas Bar No. 19347
doug.daniels@dtlawyers.com
Sabrina R. Tour
Texas State Bar No. 24093271
S.D. Texas Bar No. 2714789
sabrina@dtlawyers.com
6363 Woodway Dr. Ste. 700
Houston, Texas 77057
T: (713) 917-0024
F: (713) 917-0026
*Attorneys for Defendants Death Row Records LLC and Calvin Broadus, Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system and is available for viewing and downloading from the CM/ECF system. The foregoing document was served upon all counsel of record via the CM/ECF system on this 14th day of April, 2025.  The foregoing document was also served on *pro se* Plaintiff Lydia Harris by email (justlydia1@yahoo.com) and by FedEx (939 Eldridge Road, Sugarland, Texas 77478).

_____

Max N. Wellman